UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22203-Civ-TORRES

LUIS ROLDAN,

    Plaintiff,

vs.

PURE AIR SOLUTIONS, INC.,
a Florida Corporation, and
JAMES D. SCHOTT, an individual,

    Defendants.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    This matter comes before the Court upon a bench trial held July 23, 2008, at which the parties presented their witnesses and arguments on Plaintiff's claims for unpaid overtime and minimum wages owed to Plaintiff Luis Roldan for the time period that Roldan was employed by Defendant from March 2007 through August 2007. The Court having heard the testimony of the witnesses, assessed their credibility, reviewed and evaluated the documentary evidence admitted into evidence at trial, the arguments of counsel, and the parties' proposed Findings of Fact and Conclusions of Law [D.E. 47, 48], the following Findings of Fact and Conclusions of Law are hereby entered.

    1.    James Schott (hereinafter "Schott") is the president of Pure Air Solutions, Inc. ("the business") (collectively "Defendants").

2. Pure Air Solutions is an air condition installation and repair business located in Miami-Dade County, Florida.

3. Schott hired and fired employees at the business and determined their compensation.

4. Schott was at the business five days a week, usually arriving before 7:00 a.m. Schott worked in the office and usually left the office in the early afternoon. He did not accompany the employees when they went on service calls.

5. Schott was not usually present when the employees ended their workday and he did not work on weekends.

6. Schott, as owner and manager of the business, knew he had an obligation to pay overtime when employees worked more than 40 hours per work period.

7. Luis Roldan (hereinafter "Plaintiff") was employed by Defendants as an air conditioning technician from the week of May 28, 2007 until his separation from employment on or about August 4, 2007, a period of approximately 10 weeks.

8. Plaintiff's original complaint and statement of claim suggested that Plaintiff started his employment at the business in March 2007, but Plaintiff acknowledged at trial that was a mistake.

9. Schott hired Plaintiff because the summertime is the busiest time of the year for the business, and he needed an additional technician to handle the extra workload.

10. Over the course of his employment, Plaintiff often arrived for work at the business's office, but he would also often begin work by travelling to a worksite directly from his home without stopping at the office. Roldan usually worked alone, though his

early employment with the business involved him being assigned to work with another employee, James Flora (who testified at trial). As time proceeded, he would usually work alone, but would also on some occasions, when a job was too big for just one technician, also work with Flora.

11.    Plaintiff's typical workday started at 8:00 a.m., when he arrived at Pure Air's office to receive his daily work assignments, and it ended around 6:00 p.m. Mondays through Wednesdays were not as busy as the rest of the week, and Plaintiff sometimes finished at 4:00 p.m. or even earlier on those days. Thursday and Friday were busier weekdays, and Plaintiff often finished after 6:00 p.m. Plaintiff would also work on a Saturday or Sunday when a customer requested work over a weekend. This did not occur, however, every weekend. He primarily worked a weekend day during the summer months. The number of hours worked on the weekends varied from only a few at one project to as much as a full day. This testimony is supported by a number of the invoices produced by Defendants in the case, which include invoices for Sunday, July 1, 2007 (Service Order # 2312); Saturday, July 7, 2007 (Service Order #2317); Saturday, July 3 21, 2007 (Service Orders # 2462 and #2463); and Saturday, August 4, 2007 (Service Orders # 2341 and 2468), which was Roldan's last day of employment.

12.    Plaintiff did not complain about working weekends because he had been in the air conditioning and repair business for several years, and virtually every business he ever worked for required employees to be available to work weekends.

13.    Plaintiff was initially paid in cash for the first two weeks of his employment, receiving $600.00 in wages plus an additional $55.00 for gas expenses.

Schott also held back Plaintiff's first pay, so that Roldan was paid a week after he actually performed the work.

14.  Plaintiff's payroll checks were prepared by Defendants themselves.

15.  Plaintiff' first paycheck was dated June 22, 2007, for $532.88, which represented $640.00 less applicable taxes. The $640.00 figure was based on an understanding that Plaintiff would be paid for 40 hours at $16.00 per hour.

16.  On June 29, 2007, Plaintiff received a paycheck for $604.87, which represented net wages of $532.88 plus reimbursement for gas expenses.

17.  On July 6, 2007, Plaintiff received another check for $640.00, which represented 40 hours at $16.00 per hour, with no deductions for withholding taxes.

18.  Another check for $640.00 was issued to Plaintiff on July 13, 2007.

19.  On July 20, 2007, Plaintiff received a check for $1,040.00. This check was for Plaintiff's salary plus a $400.00 loan.  The evidence was disputed as to the purpose of the additional $400.00 payment, but the Court credits Schott's credible explanation that Plaintiff requested an advance loan.

20.  On July 30, 2007, Plaintiff received a check for $454.22.

21.  On August 6, 2007, Plaintiff received his final check for $300.00, an amount which Schott could not explain, but which may have represented a reduced amount for the loan advanced to Plaintiff.

22.  Schott admitted that he did not pay Plaintiff the hours worked the last week prior to his separation. Although Schott claimed he only owed Plaintiff for a few hours of work, the Court credits on this point Plaintiff's testimony that he was owed for the entire week ending August 3, 2007, as well as the week ending July 27, 2007,

based on Defendant's stated practice of "holding back" an employee's first paycheck. This practice resulted in Plaintiff being paid two weeks after his workweek ended.

23.   Schott maintained a timesheet to keep track of the hours worked by employees. The timesheet, however, does not accurately reflect the total hours worked by every employee. Schott did not make contemporaneous entries on the time sheets, and instead, claims to have relied on self-reports from Plaintiff as to when Plaintiff began and ended his workday.

24.   Schott also maintained a master log (admitted in evidence as Def. Exh. 9) that was an accurate reflection of the projects and jobs that the business had during the workweeks that Plaintiff worked there. This master log, maintained and updated by Schott from invoices and calls received from customers, is accurate. It does not reflect the number of hours worked per job, but does accurately show the dates worked and the technicians who worked on them.

25.   Based upon the greater weight of the evidence presented, the Court finds that Defendants under-reported on the timesheets the total amount of hours worked by Plaintiff per pay period as reflected by the fact that Defendant paid Roldan for 40 hours each week, irrespective of the fact that the timesheets showed fewer than 40 hours. Not all of the hours worked by the Plaintiff necessarily recorded by Defendants. Defendants, therefore, did not abide by the duty to accurately record all of Plaintiff's work hours.

26.   However, Defendants presented credible testimony at trial that rebutted Plaintiff's reasonable estimate of the overtime hours he worked. The number of projects reflected on the master log contradict Plaintiff's claim that he regularly

worked over 40 hours per week each week that he worked for the Defendants. They also rebut Plaintiff's claim that he worked every weekend. To the contrary, the evidence presented showed that Plaintiff occasionally worked a weekend day, especially during the month of July and early August, but not to the extent that Plaintiff testified to at trial. Plaintiff's testimony regarding the number of hours he worked over 40 each week was self-serving and simply not credible.

27. It is undisputed that Plaintiff never received any overtime pay while employed by Defendants.

28. This is an action for minimum wage and overtime violations under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 201, et seq. The FLSA requires that employers pay employees a minimum wage, establishes the maximum hours that an employee can work at a regular pay rate, and requires overtime pay for hours worked in excess of forty hours per workweek. 29 U.S.C. § 201, et seq.

29. The FLSA applies to enterprises with employees who engage in interstate commerce, produce goods for interstate commerce, or handle, sell or work on goods or materials that have been moved in or produced for interstate commerce.

30. This Court has jurisdiction over the subject matter and the parties pursuant to the FLSA. The parties do not dispute that venue properly lies in the Southern District of Florida. Defendant admitted that it is an enterprise engaged in interstate commerce in its Answer and no contrary evidence was introduced at trial to show otherwise.

31. Under the FLSA, employers must keep payroll records and pay employees a minimum hourly wage and overtime. 29 U.S.C. §§ 201-11. The FLSA requires

employers to pay overtime to employees who are "employed" more than forty hours per week.  29 U.S.C. § 207 (a)(1); *see, e.g., Dade County v. Alvarez,* 124 F.3d 1380, 1384 (11th Cir. 1998).

32.     The term "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203 (g); *Reich v. Department of Conservation and Natural Resources, State of Ala.,* 28 F.3d 1076, 1082 (11th Cir. 1994).  "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11.  If an "employer knows or has reason to believe that the employee continues to work," hours will count for the purpose of overtime under the FLSA.  29 C.F.R. § 785.13; *Reich,* 28 F.3d at 1082.

33.     Florida's minimum wage is guaranteed by the Florida Constitution. Fla. Const. Art. 10, § 24. The Florida Minimum Wage Act, Fla. Stat. § 448.110 "provide[s] measures appropriate for the implementation of s. 24, Art. X of the State Constitution." Fla. Stat. § 448.110 (2).  "The provisions of §§ 213 and 214 of the federal Fair Labor Standards Act, as interpreted by applicable federal regulations and implemented by the Secretary of Labor, are incorporated [in the Florida Minimum Wage Act]."  Fla. Stat. § 448.110 (3).

34.     Under the FLSA, the term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v.*

*Wargo,* 803 F.2d 632, 637-38 (11th Cir. 1986) (citing *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983)).

35. Schott is an "employer" for FLSA liability purposes. Based on the evidence adduced at trial, the Court finds that Schott exercised control over the business, financial and employment affairs of the business. Schott was at the business on most weekdays and supervised employees including the Plaintiff. He hired and fired employees and determined the business's policies including that the business would not pay overtime.

36. In order for Plaintiff to recover for uncompensated overtime work under FLSA, he must show that: (1) he worked overtime hours without compensation, and (2) that the Defendants had knowledge, or should have had knowledge, of his overtime work. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946); *Reich,* 28 F.3d at 1082.

37. An employee who files suit under the FLSA for unpaid minimum wages or unpaid overtime compensation and liquidated damages bears the initial burden of proving that he performed the work for which he was not properly compensated. *See, e.g., Santelices v. Cable Wiring,* 147 F. Supp. 2d 1313, 1328 (S.D. Fla. 2001) (citing *Anderson,* 328 U.S. at 687-88).

38. "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records," but "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." *Anderson,* 328 U.S. at

687. In "such a situation . . . an employee has carried out his burden if he proves that he has in fact performed the work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* The "burden then shifts to the employer to come forward with the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. Where the "employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

39. The Court finds that in this case Defendants' records are inaccurate and not entirely reliable. Defendants paid the Plaintiff a set weekly salary based on 40 hours time his $16.00 hourly rate, but failed to keep precise and accurate records of the Plaintiff's hours.

40. "Where the inaccuracy [of records] is due to the employer's failure to keep adequate records as required by statute, and the employee has demonstrated that some work was performed for which he was improperly compensated, there is a right to recovery, even though the amount may be uncertain and damages difficult to calculate." *Leonard v. Carmichael Props. & Mgmt. Co.,* 614 F. Supp. 1182, 1186 (S.D. Fla. 1980) (citation omitted).

41. Plaintiff did not meet his prima facie burden in this case by establishing through credible testimony at trial that he performed the work for which he was improperly compensated. Plaintiff did not credibly testify that he ever worked more in excess of forty hours. Given the inaccuracy of the records, the issue boiled down to

a credibility contest between the Plaintiff and Schott. Plaintiff's repeated exaggerations and inconsistent testimony led the Court to discount much of the substance of his testimony. For instance, Plaintiff's testimony that he worked every weekend, for more than 10 to 15 hours each weekend, is belied by the Defendants' master log that is stipulated to be an accurate representation of the projects undertaken by Defendants' employees during the relevant time period. Plaintiff's testimony on direct examination was undermined by these accurate records that reveal, from the greater weight of all the evidence, that Plaintiff's testimony was not accurate. At best, the documentary evidence shows that Plaintiff is exaggerating his claim. Additionally, Plaintiff conceded, and the master log confirms, that there were many days during each week when he may not have had any projects to work on and may have left home early for the day. The evidence thus shows that any time worked on weekends only made up for time he did not work during the week. In any event, the Court, as trier of fact, is compelled to discount his testimony when the evidence shows that it is not reliable.

42. Schott, on the other hand, conceded many facts at trial that were contrary to his own interest, but credibly insisted that Plaintiff did not work anywhere near what Plaintiff claimed to have worked. As the Court's duty as trier of fact requires the Court to weigh these witnesses' contradictory testimony, the Court is persuaded that the Defendants' witnesses were more credible and reliable.

43. Accordingly, the trier of fact does not accept Plaintiff's testimony that he ever worked in excess of 40 hours per week.

44. Even assuming that Plaintiff's self-serving and non-credible testimony is sufficient to meet his burden, the Court also finds that Defendants have provided credible evidence of the actual number of hours worked by the Plaintiff and with proof that negates the reasonableness of any inferences that can be drawn from Plaintiff's own evidence. Given the amount of projects that Plaintiff worked on it is more likely than not that the work he performed during any one week did not exceed 40 hours.

45. With respect to Plaintiff's minimum wage claim, however, Schott admitted that he did not pay Roldan for his last week of employment, and further admitted that he "held back" Plaintiff's first paycheck, which resulted in Plaintiff being paid two weeks after his workweek ended. Given these payroll practices, Plaintiff's final check should have been for two weeks of employment.

46. The Court therefore must find that Plaintiff is entitled to an award for unpaid minimum wages, calculated based on 80 hours at the Florida minimum wage rate of $6.67, for a total of $533.69.

47. Plaintiff is entitled to judgment in his favor and against Defendants, James Schott and Pure Air Solutions, Inc., for this amount.

48. Plaintiff, as prevailing party, may alsobe entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216, limited however to only a recovery for the unpaid wages.

49. The Court retains jurisdiction over the attorney's fees and costs for this case, for which the Plaintiff may file a separate motion in accordance with S.D. Fla. L.R. 7.3.

50. Final Judgment will be entered by separate order, in accordance with Fed.R.Civ.P. 58, following resolution of any such motion.

**DONE AND ORDERED** in Chambers at Miami, Florida this 27th day of January, 2009.

                                            EDWIN G. TORRES
                                            United States Magistrate Judge